Ladies and gentlemen, we have four cases on the calendar this afternoon, two patent cases, one from the ITC and one from the Patent Office, and we have a vaccine case from the Court of Federal Claims and a government employee case. The latter two are being submitted on the briefs and will not be argued. Our first case is MEMS TECH v. ITC and Knowles Electronics. Mr. Fisher. Good afternoon, and may it please the Court. This case is on appeal from a final determination of the ITC of a violation of Section 337 based on two patents, the 089 patent and the 231 patent, both of which are directed to packages for a MEMS microphone. In the 695 investigation, which was just completed last month, the ALJ found and the Commission adopted as its final determination that each of the asserted claims there was either anticipated or obvious, including Claim 1 of the 231 patent and Claims 1, 2, 17, and 20 of the 089 patent, which are asserted here. Mr. Fisher, you've raised a lot of issues, and a lot of issues were necessarily, I guess, in the ITC, but I want to ask you about this chamber chip issue, because as I go through all this material, the ALJ said the chamber chip configuration is not part of this decision, as it is not properly performing. And then the Commission said, well, you're not making a finding as to whether particular products not considered by the ALJ are or are not within the scope of the order. But note that the order generally covers products that infringe. Now, in the ALJ, one doesn't get damages looking forward, and my understanding is that all of your products now have the chamber chip. So that almost looks like, and you're going to correct me because maybe I'm wrong, that that issue wasn't decided. Does this deal move? The chamber chip is included in all of our products. It's included in all of your products? Yes. But if the Commission didn't decide that issue, then it's not part of the exclusion order. The Commission modified its final order on petition by Knowles to amend or to remove the language that specifically excluded the chamber chip. The ALJ in the ID, based on Knowles' request, said that the chamber chip was not properly before him and that any exclusion order that shall issue shall not include the chamber chip. Knowles petitioned to have that part of the ID reviewed. The ITC decided not to review that portion of the ID and adopted that portion as its final determination, that the chamber chip should be excluded from any limited exclusion order. Knowles then petitioned the ITC, and the ITC violated its own rule, Section 210.47, which says a petition can only be granted for a new question that is being raised and where the petitioner has not had an opportunity to fully brief the issue. Knowles had fully briefed the issue numerous times. So your appeal is basically on this issue, on the asserted violation of the rule? And if you lose on that, what's the status of the exclusion order with respect to MEMS, whose products all have a feature that is not part of the exclusion order? The exclusion order now is ambiguous as to whether, in my view, the exclusion order should not cover the chamber chip, but they removed the language that said specifically in granting Knowles' petition. And our appeal is that the ITC's decision to grant that petition, to have the language removed from the limited exclusion order, should be reversed, and the language should be back in to give our clients certainty that these products, having a chamber chip, are not covered by the limited exclusion order. So you're asking us then to send this back to the Commission to amend the AO? To the extent the limited exclusion order is not vacated for other reasons, the AO should be amended to replace the language that says the chamber chip, products containing the chamber chip, are not covered by the limited exclusion order. Products containing the chamber chip should not be included? That's right. Should not be excluded. Should not be excluded. Language should be included so that they are not excluded. Sorry we got you off the track, but that's the nature of our logic. That's the way it works. All of the claims of both of these patents are directed to nothing more than a very simple package for MEMS Microphone. The fact that the ITC has finally determined that all of the asserted claims in the 695 investigation have been found invalid is reason of basis alone to vacate the limited exclusion order here. With respect to what happened in the 629 investigation, this investigation, the ITC erred in construing claim terms so broadly, so as to remove the inventive features described in the patent specifications, then having stripped the claims of those features, narrowing the claims to sustain their validity based on extrinsic evidence, not on the intrinsic evidence or the inventions described in the specification. Is that because the ALJ found that the package was in the claim and it was a limiting factor of the claim itself? The basis for his findings was that he initially found that the preambles were limitations, and then he said they deemed no construction. So the preamble is a limitation. The preamble is the only place where the term package is found. Found it needed no construction. Found that MEMSTEC's products infringe. Then in doing his validity analysis, distinguished the references based on certain characteristics of package necessary to find the first and second level of interconnection, necessary to find that it's a single self-contained unit. None of these features of a package are described in the intrinsic evidence. These definitions came from Knoll's expert, and it was improper to narrow the claims and sustain the validity when the broad construction was applied to find infringement. But if, in fact, we agree with you that the preamble is not limited to the package, the package is not a limiting factor, doesn't that make the claim broader and it really backs up in anticipation? It does make the claim broader, and all of the art comes in, and the reasons for the ALJ or the ITC distinguishing these references all goes away. It was its basis for finding these features of a package not present in certain prior art references that he was able to sustain the validity. But if we find that the anticipation and the obvious positions still remain and the claims are not anticipated and not obvious, making the claims broader doesn't create more of an infringement problem. The broader the claim, the more the validity problem Knolls will have, and the infringement problem, as construed presently, and as the ALJ construed the claims and used it as infringement analysis, he used a narrow analysis for validity. If you were to broaden that and find the package is not a limitation, given the other claim construction issues here, these packages are directed to nothing more than a substrate with a cover and a hole in it. All the prior art shows that, so there's a validity problem. Would there be an infringement problem? Yes, under the broad construction, there is simply no inventive feature set forth in these claims. As we get to the claim construction issues, there are inventive features described in these specifications, but as construed by the ALJ and the ITC, those features are no longer present in the claims. Even if those features are found, however, those features are also found in the prior art. So I'd like to turn, if I could, to the claim construction of the claim term volume, which appears in all of the claims of the 089 patent. The 089 patent abstract describes the invention as including a transducer unit being attached to the upper surface of the substrate and overlapping at least a portion of the recess wherein a back volume of the transducer is formed. The summary of the invention goes on to state that the substrate has an upper surface with a recess found therein and then again describes a transducer as overlapping that recess so that a back volume of the transducer is formed. The 089 invention is the enlarged back volume created by forming a recess or hole in the substrate underneath that transducer. The entirety of the 089 patent specification discusses the volume only in terms of this back volume and illustrates the back volume consistently as figure element 18 in the drawings. And figure element 18 always shows a recess or hole in the substrate where the transducer is to be mounted. Under Phillips and C.R. Bard, the proper construction of volume requires that there be a recess or hole in the substrate over which the transducer is mounted because this enlarged volume is the invention described in the 089 patent. Figure 1, 18 is the volume, right? That's right. In all the figures, everywhere where you see 18, it will be the back volume and it will be a recess or hole in the substrate where the transducer is mounted over. The Commission in Knowles argued that under this proper construction some of these figures wouldn't be covered by Claim 1 but the ALJ also recognized that even under his construction, his broad construction, some of the figures wouldn't be covered either. As this Court has held in the Intiman case, it's not necessary that a claim cover each and every embodiment. So the Commission's strained attempt to cover as many figures as it can is contrary to both Phillips and C.R. Bard which hold that the claim construction should be in view of the intrinsic evidence and where the invention as a whole is described as including a particular feature such as the enlarged back volume here, it is appropriate to construe the claims to include that feature. Here the enlarged volume in the substrate is the 089 invention and the ITC erred by ignoring the intrinsic evidence and broadly construing volume such that it would cover nearly all MEMS packages. Turning now to electrically coupled. Both the 089 patent and the 231 patent describe adding a conductive layer onto the substrate. The purpose of this layer is to allow for directly mounting the components onto the conductive layer to get a direct electrical connection between the conductive layer and that component. The 231 patent describes the components within the package as surface mountable components. This means that the electrical connection is a direct connection between that component and the pattern conductive layer. The idea described in the patent is to have a substrate, to put down some conductive traces and then to put the component right on top of that trace which is a direct electrical connection. The accused devices do not use that technology. They put a device onto the substrate, they run a wire to another component, and then run a wire out. So there is no presence of a direct electrical connection between the transducer. It's not direct between the transducer and the pattern conductive layer as the claims require and the specifications explain. Is that because of the claims or is that because of their argument before the patent office or the prosecution? For the 089 patent, the applicants distinguished their invention based on the fact that the prior art did not show this direct electrical connection. So they distinguished a reference that did not show putting the transducer on top of the layer and argued that since it's not on top of it, it can't be in a direct electrical connection. I'm sorry? They argued there was no direct connection to it. They argued that the direct electrical connection as set forth in the claims was not shown in the prior art. To get the claim allowed, the patent office included that in their notice of reasons for allowability. Is that all part, is the entire prosecution history part of the record? For the 089 patent, it is. For the 089 patent, it is part. The 231 patent is not. I see that I'm in my... Yes. I would like to make one further point that the inventor, under a proper validity analysis, none of these asserted claims is valid because they're all directed to nothing more than a simple package that includes a substrate of cover and an aperture. Aperture allows the sound to come in. The inventor came up with this package in just six days. The prior art shows that those skilled in the art routinely made simple modifications of packages to adapt them for different applications and made use of existing packages for new applications. In finding the claims valid, the ITC erred by not taking into account the inferences and creative steps of an inventor and simple common sense, as this court precedent requires. The court held in the Ball aerosol case, then confirmed recently in the Wires case, that where all of the limitations of the patent were present in the prior art references and the invention was addressed to a known problem, KSR compels a finding of obviousness. It's undisputed here that all of these features were found in the prior art for the purposes in which they're used in these patents. Thank you. Let's hear from the Commissioner, Mr. Lieberman. Do you want to give us your view on the championship issue? Sure. Good afternoon. May it please the Court, Michael Lieberman, for the International Trade Commission. Yeah, I would address, I would try to address as many issues that were raised in the appellant's presentation. And I will start with... And of course, we're splitting the time. Right. So, with respect to the championship issue, the judge, as part of the investigation, the judge found, specifically, based on the record before him, that the championship configuration devices are not included in this investigation. And therefore, there was no determination made with respect to those devices. And when the Commission issued the first version of its opinion, it was inadvertent discrepancy with the previous determination of the Commission, who actually decided not to review and to reverse this finding by the judge. So, to make the opinion consistent with the order, exclusion order, and with the ID, the Commission granted a request for the reconsideration filed by note. And the Commission was, we believe, entirely within the limits of its discretion. The petition was... What was its holding on that issue? The holding was that, essentially, this limited exclusion order does not... Essentially, the Commission made no determination with respect to those championship... And that's what all their products contain, right? Well, it's... We're not talking about damages in the IPC. We're talking about an exclusion order, looking forward. Well, looking forward, you know, it remains an open question. You know, it should be a determination made in the future with respect to these championships in the due course. The action should be brought to the Commission, and the Commission will decide whether the exclusion order should cover these devices or not. But in this setting... Didn't they have to send the case back? Because that was in the case, wasn't it? It wasn't in the case. The judge decided that it was... These devices, they were not properly brought before him, and therefore, it wasn't part of his determination. So, if the party, the aggrieved party, wants to bring this to the attention to the Commission, they can certainly come to the Commission, and the Commission will make a determination based on the record, on the evidence in the due course. But it cannot be just done the way it was done in the original opinion. What about the interaction, if any, between the 695 investigation and this one? You said that maybe they should be sequenced. The cases should be sequenced or something, which I didn't quite follow. Well, we believe that it's really... The 695 investigation determination at this point does not affect the determination of the Commission in this 629 investigation. The determination of 695 was made on a different record, and at this point, we don't even have any motions from the parties to somehow address the 695 issues in 629. So we should, in your view, we should decide this case on the record that we have, and not be concerned about the other one where the finding was just not... We believe that that's exactly the case. These issues, and we believe that these issues can be perfectly decided based on the present record. Also, in 695, there has been no notice of appeal filed yet, so we don't even know whether it will be appealed or not. And the parties essentially have done nothing with respect to either requesting any remand or rescission or anything. It was just a separate investigation, separate determination, and we believe that this case should proceed forward, at least at this point. Now, what happens in the future, we don't know. At some point, maybe there may be some issues of judicial efficiency that court will address and decide. But at this point... How does the 629 result here impact the 695 investigation, if at all? Well, I don't think that it will affect the 695 investigation. In the 695 investigation, there were some additional pieces of prior art deserted that were not deserted in 629. And, in fact, any determination of the merits in 629, I don't know to what extent it will affect 695. I don't believe that it will affect it. Well, the same patents are involved in 695 and 629. That's right. But in 629... We construe the claims in 629, and will that impact the findings of 695? Well, the construction of the claims were consistent in 629 and 695, and they were made by the same judge. And if... That's not my question. My question is whether or not, if the claim construction, which is given by this court, whether we agree with the ALJ or not, will that be impacting the 695 investigation? Well, changing the claim construction, of course, will affect the outcome in 695, because the same claims are involved. So if you apply the different claim construction, the result may be different. Because there the issue is essentially validity, and claim construction is an essential part of the validity analysis. So, of course, it will be impacted if the claim construction is changed, whether it's changed as part of 629 or whether it's changed in 695, if the appeal is filed. But claim construction may affect the outcome in the validity analysis in 695. Now, another issue that was raised by the appellant is that preamble in 629... Package. In the package. The package term in the preamble is not limiting. That was the issue raised by the appellant. And we believe that based on the intrinsic evidence, in this case the preamble is actually limiting, although generally it's a close question whether the preamble is limiting or not. But in this case, both the claim language and the specification and the expert's testimony indicate that preamble is limiting. Now... What is the structure of the preamble to limit the term packaging? Don't we need structure to define the preamble to be defined? Well, package itself is a self... Well, package itself is a certain structure that has certain characteristics. And there was a testimony of the expert that one of ordinary skilled in the art would understand the package is a certain structure, which has two levels of interconnection. Which expert are you referring to? It's Dr. Gilel, NOLS expert. And that was a testimony that was not rebutted, actually. And this testimony is not used to substitute for the intrinsic evidence. It's used properly to explain the meaning of intrinsic evidence, which is perfectly fine under Vitronics or any other holding of this court. Are you saying that the claim speaks for itself because the components of the claim, the claim limitations are multiple when they constitute the package? Well, they constitute a package. Package provides kind of structural framework for those elements. And if you look also into the specification, the specification expressly speaks about the invention as a package. And it discusses the benefits of this invention as compared to prior art in terms of the packaging. So... And the summary of the invention provides five major objects of the invention. All of them speak in terms of packages. So if we remove package from... If one decides that package is not limiting, all this discussion just has no support. And the elements in the claim body essentially are deprived of this structural framework. So it's really limiting in this case. But if you took package out of that claim, claim one specifically, it says microelectromechanical system package comprising. If you took package out, it would just be a micromechanical system comprising. Is that in fact the claim you're in? Well, it will imply that... It will affect the claim because it will remove this notion that at least two levels of interconnect should be provided by the package. One is between the device and the package. And another one is between the package and outside world. And these elements, they just... The package is being limited, is being limiting. They just don't expressly provide that. But even Mr. Jaleo's testimony indicates that there are only two important factors in the MEMS device. One is protection of the MEMS device, which is part of the, quote, package. And enabling interconnections to the printed circuit board. That's correct. That's all you need. Well, but... According to the expert. That's correct. But we believe that without package being actually limiting, actually having limiting effect, the claimed elements in the body of the claim, they just do not provide in themselves those two features. Your time has more inspired and great to share. Thank you. Good afternoon, your honors. I think as opposed to what I originally wanted to talk about, I'd like to address some of the questions that came up already in the prior argument. First, from Judge Mayer, looking at the question on the 695 and some of the relationship, and you said that the decision was totally opposite. It's really not totally opposite. If you look at the record that's before this court and the record before the court in 695, the only similarities on the issues of invalidity are on the Baumhauer reference. And on the Baumhauer reference, the court in 695 did find that there was no anticipation and that the claims were valid over Baumhauer. All the other arguments that existed on the other claims that were involved are in different prior art. So... But the bottom line... The bottom line is there are issues... Down here, but isn't down there. Correct. And those are issues that will be addressed if an appeal comes up on those. But with regard to what's similar to what the court is dealing with here on the issues, the court in 695 did hold that Baumhauer did not anticipate the patents. And there were different claims also involved in both. Is that the only difference? The... Between 695 and... What's the that? I'm not sure what you're referring to. The Baumhauer... No. There are different claims are in existence. There are some overlap in the claims, and then there are differences in the claims. There are some claims that are asserted here that are not asserted in 695. There are some claims asserted in 695 that are not asserted here. So you've got differences both ways. Dependent claims? Dependent claims and independent claims, I believe. There are? Yeah. Okay. Then the issue is also as far as the chambership issue. I wanted to address that. That is, in a way, no different than any kind of after-the-fact or after-the-hearing modification. In other words, you have the same products that were addressed during discovery, which was the design that the case involved on. And then after discovery, there was the testimony that, oh, now we modified things. So it is when there was an exclusion that was addressed, it wasn't an exclusion as in this new design doesn't infringe. It was an exclusion only because it was after the preceding modification. So it would be like anyway. And we don't deal with it. Yeah. They want to do some kind of advisory opinion. In other words, the accused products, this is still the accused product. The accused products were their MSM series products. Those with the chamberships, still the MSM series products, and it's no different than anyone that comes up with a new design. After the proceeding, they would go through and get an advisory opinion to see if they're okay. So that's the issue on that. The next issue is there was discussion on package as far as whether there was an inconsistency and whether the commission, whether the ALJ ruled one way for validity purposes and one way for infringement purposes. And I would say very much there is no inconsistency on that. And in particular, if you look at the infringement analysis, there wasn't a need to define package to begin with because that was never disputed by the appellant. The only issues on infringement that they raised, and that is gone over in detail in the ID, the only issues were the definition of layer and the definition of cover. They did not dispute the package issue. So the fact, number one, the fact of the matter was there wasn't a definition provided that could have been inconsistent. Number two, if you look at in the ALJ, the ALJ does come out expressly and says, yes, although these other things aren't disputed, and he addresses only those things that are disputed, the judge then goes on to and says, but I find that Knowles has proved all the elements in the claim. And in doing so, the judge says, and I show that there is a package in both patents, and his ruling on that is on A212 and A217 of the record. But what he does is if you look at the proof that he relied upon for that decision, that includes the electrical connection. One of the issues that you mentioned, Your Honor, as far as what Dr. Gillio said was the attributes of a package, one of them being the electrical connection to another circuit, that is very much one of the things that the judge relied upon when he said, yes, and I find there was a package. The other thing that's important. I'm so bothered by the limitation that was essentially established by the ALJ in describing the package in the claim, the limitation in the package. In the preamble? Okay. First thing I want to make sure that is clear when we talk about the preamble is the preamble is only talking about the 231 patent. It's not talking about the 089. Okay. So now let's take a look at the 231 patent and whether the package, if you will, brings life to it. Okay? And what is said about the package and how it is. There were really three things I would submit that are identified in the package and why you could say this thing does, in fact, bring life to what is there. First of all, the court said that to be a package, it has to be a single self-contained unit. In other words, you have a bunch of elements that are recited in the claim and one of the fundamentals of a package is that it's not just elements on a printed circuit board. It brings these all together. What about the term comprise? Is that open-ended? Yes. Yes. Sure. Correct. So it's not limited to the particular element. No. And when I said it brings it together, I don't mean in limiting it to just those elements. I mean as opposed to having a number of individual elements on a printed circuit board. In other words, a package, going back to what Dr. Gillio said, as you pointed out, one of the things it does is it gives protection. In giving it protection, it's some enclosed piece. It's a coherent piece. It's not individual items on a circuit board. And that's why on A383, the commission says, we adopt the ALJ's finding that the term package makes clear that all the components listed in the claim body must come together to form a package. The elements cannot simply be found on a printed circuit board, but must be provided as a single self-contained unit. That's what we're talking about. That's what we refer to throughout the specification as this invention is about a package. It's not about individual elements on a printed circuit board, which is what Baumhauer is. Baumhauer has individual elements not brought together as a package, but put together on a circuit board. And that's the very distinction. Then the court went on to say, and Dr. Gillio went on to say, there are other specific attributes of a package. Those attributes being the protection, the protection involving really this housing or enclosure, and the other attribute of the package being the fact that it can now make an electrical connection to the outside world. Thank you, Mr. Sternstein. Okay. Thank you, Your Honors. I think we have three minutes rebuttal. Thank you for restoring my rebuttal time. Initially, I'd like to pick up where we left off with package. It can't be said that these features, that there's protection, and the ability to connect these electrical devices to electrical circuits can sustain the validity of these patents. The Onishi reference is a package. Baumhauer is a package. Mullenborn is a package. And, in fact, in the 695 investigation that I just completed— Onishi was sealed, though, wasn't it? It was sealed. But when questioned, Noel's expert agreed, if I put a hole in that sealed package, could you put a microphone in there and would it work? And the answer was yes, it would. And would it protect the microphone? Yes. And would it fit in there? Yes. And would the sound hit the microphone and would it work as a microphone package? Yes. And that's what the Kress and Peterson references show also, that those skilled in the art— the Peterson reference took a pressure sensor package, and a pressure sensor package has a hole in it because the thing being measured has to get inside, and created an accelerometer package that does not have a hole in it. And he said, that's desirable because we're making these pressure sensor packages and it works. So let's use that package, modify it, remove the hole. These are all very simple modifications, well within the toolkit of those skilled in the art. In the 695 investigation, the ALJ again found that Baumhauer does not disclose a package, but then it went on to say that Baumhauer plus the hearing aid MEMS package described in the Shurgeon reference does invalidate Claim 1 of the 231 patent. So to the extent that Baumhauer doesn't have a package, combine it with Shurgeon, combine it with Omishi, combine it with Kress-Peterson, there's nothing inventive there. Also with respect to the 695 investigation, to the extent that there are overlapping claims, no limited exclusion order can be directed to those claims that have been found to be invalid in 695, because those claims are now invalid. And finally, with respect to Chambership, this situation is very different. Very different than going back for a redesigned product to get it covered by a limited exclusion order. The Chambership products were before the ITC. Knowles on its own sought to have those products removed from the investigation. The ALJ granted them the relief they asked for, said that the Chambership products should not be included in the limited exclusion order. It was fully briefed on petition for review. It was decided not to review that portion of the ID. Knowles requested further brief the issue again. So numerous times to try to have that language removed, and the ITC granting that petition where the Knowles had the opportunity to be heard numerous times is a direct violation of 210.47 and should be reversed. Thank you. Thank you, Mr. Fishwood. The case has been taken under review.